JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Allen Shine appeals from his convictions after a jury trial for drug trafficking, drug possession, and possession of criminal tools.
 {¶ 2} Shine argues the trial court made several mistakes that justify reversal of his convictions. He contends the trial court acted improperly in initially refusing to sever two separate indictments filed against him, in permitting the jurors to pose questions to the witnesses, in allowing the state to present the testimony of a "surprise" witness, in denying his motion for an independent laboratory test in this case, in transposing the customary order of trial by giving the jury final instructions prior to the parties' closing arguments, and in imposing a sentence that lacks adequate justification in the record. Shine further asserts his convictions are not in accord with the weight of the evidence.
 {¶ 3} After a review of the record, however, this court can agree with none of Shine's assertions. Therefore, his convictions are affirmed.
 {¶ 4} Shine's convictions result from a "buy bust" operation conducted by the Cleveland Police Department on June 4, 2002. The police had received numerous complaints of drug sales taking place in the vicinity of East 139th Street and Kinsman Avenue. In order to discourage this activity, Fourth District Vice Unit detectives obtained the services of a confidential reliable informant ("CRI") to expose people involved.
 {¶ 5} On the day of the incident, Detectives Luther Roddy and John Hall photocopied an amount of marked currency, met with the CRI at the district headquarters, and searched him to remove all items from his person. Hall then drove him close to the targeted intersection; Luther and another set of detectives followed in two additional police vehicles.
 {¶ 6} Upon their arrival, Hall noticed a man, later identified as appellant Shine, standing at the gas station located on the south side of Kinsman Avenue. In Hall's experience, Shine's actions indicated he was attempting to obtain drug business: he was waving his hands and calling out to pedestrians and to people passing by in traffic. Hall at that point provided the CRI with a $20 bill.
 {¶ 7} When the CRI exited Hall's vehicle, he remained in the view of both Hall and Luther, who had parked approximately 50 feet away at a different vantage point. The CRI loitered in the area. After a short time, Shine approached him. The two had a brief conversation.
 {¶ 8} Luther and Hall saw Shine and the CRI stroll northbound on East 139th Street past four or five houses before Shine separated from the CRI to cross the street. Shine approached the front porch of a residence where two other men had congregated. He spoke to one of them, was handed something, and returned to the CRI. When the CRI gave Shine the marked bill, Shine passed an item to him. They then separated; Shine rejoined his colleagues while the CRI walked back toward Kinsman Avenue.
 {¶ 9} At Luther's signal, the CRI came to his vehicle to provide him with the item obtained from Shine. It appeared to be a rock of crack cocaine; therefore, Luther radioed the detectives in the "take down" unit to apprehend Shine and his colleagues.
 {¶ 10} Later analysis of the item proved it was a rock of crack cocaine that weighed .12 grams. Although upon his arrest Shine had money in his pocket, it was not the marked bill; instead, one of his colleagues had possession of the currency given to the CRI. Detective Michael Rasberry of the "take down" unit saw Shine's other colleague attempt to dispose of a bag containing several rocks of crack cocaine before his capture.
 {¶ 11} Shine subsequently was indicted in CR-425200 with one of his colleagues; four charges pertained to Shine. Shine was charged with two counts of trafficking in crack cocaine, R.C. 2925.03(A)(1) and (2), one count of possession of crack cocaine, R.C. 2925.11, and one count of possession of criminal tools, R.C. 2923.24.
 {¶ 12} Shine's case proceeded to an individual jury trial. Before conducting voir dire on the scheduled date of trial, the trial court considered preliminary matters. One of these was the prosecutor's oral motion to consolidate for trial CR-425200 with an earlier one, CR-423921. Shine had been charged in that case on one count of possession of drugs for an incident that had occurred in April, 2002.
 {¶ 13} Defense counsel registered a protest to the motion. He argued the state previously had given him no notice of this intent, and that the similarity of the charge in CR-423921 would prejudice his client in the eyes of the jury. Counsel conceded, however, that he had come prepared to try both cases.
 {¶ 14} For purposes of the record, the trial court reasoned a single trial that included the additional charge was not unusual and would not cause undue prejudice to Shine, thus, it granted the motion. Consequently, the trial court alluded to both cases when instructing the potential jurors prior to voir dire.
 {¶ 15} Before the trial actually commenced, however, the trial court severed CR-423921 from the proceedings. This occurred after Shine brought the trial court's attention to his pro se motion for an independent laboratory analysis. Apparently, the original of his motion had been filed in CR-423921; the record reflects only a xeroxed copy had been filed in the instant case.
 {¶ 16} The trial court declined at that juncture of the proceedings to grant Shine's pro se motion for independent testing as to CR-425200. The court justified its decision by stating Shine's request had been overlooked because although the caption of his motion included CR-425200, the body referenced only the necessity of an independent test in CR-423921, which rested on proof of the existence of "residue." The trial court informed Shine that since this case involved a different type of evidence, trial would not be continued; nevertheless, since CR-423921's docket reflected his motion had been granted, that case would be tried separately. Shine's jury trial in the instant case thereupon proceeded.
 {¶ 17} During its case-in-chief, the state presented the testimony of Roddy, Hall, and the police department's forensic analyst who had tested the item Shine had given the CRI. The prosecutor thereafter requested to call Rasberry as a witness. Defense counsel objected on the basis he had not been provided written discovery indicating an intent to present Rasberry's testimony and therefore had no opportunity to prepare.
 {¶ 18} The trial court resolved the problem by calling a recess in order to give counsel time to speak with Rasberry and to consult with his client. Thereafter, when counsel informed the court he was "prepared to go forward," the prosecutor was permitted to continue with the presentation of Rasberry's testimony.
 {¶ 19} The jury ultimately found Shine guilty of each of the four charges. The record reflects Shine thereupon decided to change his plea in CR-423921; the trial court accepted his guilty plea to that charge and ordered the preparation of a pre-sentence report. The trial court eventually sentenced Shine to concurrent terms of incarceration of eleven months on each one of his convictions in CR-425200 and CR-423921.
 {¶ 20} Shine has filed this appeal from his convictions in CR-425200. He presents seven assignments of error for review.
 {¶ 21} Shine's first assignment of error states:
 {¶ 22} "I. The trial court's failure to sever the indictments into two trials was an abuse of discretion which resulted in the admission of other acts evidence to the prejudice of Mr. Shine."
 {¶ 23} Shine argues the trial court's initial decision to permit CR-423921 to be tried with the instant case constituted reversible error. He contends the trial court's reference to the other charge prior to voir dire prejudiced the members of the jury. This court disagrees.
 {¶ 24} Obviously, no jurors had been chosen prior to voir dire. When the jury had been seated, the trial court instructed its members that "opening statements, remarks during trial, and closing arguments arenot evidence." (Emphasis added.) Moreover, before opening statements and therefore before the presentation of any evidence, the trial court instructed the jury that "the first charge that I read to you, the possession of drugs that was alleged that occurred on April 30th of 2002, that will no longer be a part of this case. * * * It will not be before you for consideration."
 {¶ 25} The jury is presumed to have followed the instructions of the trial court. Pang v. Minch (1990), 53 Ohio St.3d 186. Since at the time the trial court severed the cases the jury as yet had received no evidence, Shine cannot support this assignment of error.
 {¶ 26} Accordingly, it is overruled.
 {¶ 27} Shine's second assignment of error states:
 {¶ 28} "II. The trial court erred in allowing jurors to question witnesses, when such questioning is a gross distortion of the adversary system that undermines the jury's role as a neutral fact finder thus prejudicing (sic) the defendant."
 {¶ 29} The argument Shine makes with respect to this assignment of error reveals it is identical to the one recently considered by the Ohio Supreme Court in State v. Fisher, 99 Ohio St.3d 127, 2003-Ohio-2761.
 {¶ 30} The Supreme Court decided in Fisher that the practice of allowing jurors to question witnesses does not in itself constitute reversible error. Additionally, the practice does not constitute an abuse of discretion when the trial court erects certain procedural safeguards. Id. at 134.
 {¶ 31} The record in this case demonstrates the trial court complied with each of the procedural requirements set forth in Fisher.
The trial court fully instructed the jury as to the proper procedure to be followed, included a caution that some questions might not be appropriate but would be rephrased if possible, asked the jurors to submit their questions in writing, reviewed the questions at sidebar, consulted with counsel, and then permitted each counsel to ask "follow-up" questions of the witness. Id. at 135.
 {¶ 32} Under these circumstances, Shine's second assignment of error lacks merit. Therefore, it is overruled.
 {¶ 33} Shine's third assignment of error states:
 {¶ 34} "III. The trial court erred to the prejudice of appellant by permitting the testimony of witness Detective Rasberry when such witness was not disclosed to the defense within a reasonable time prior to trial as required by Rule 16 of the Ohio Rules of Criminal Procedure."
 {¶ 35} Shine argues that in allowing the prosecutor to present Rasberry's testimony, the trial court compromised his ability to prepare his defense. Shine's argument cannot be credited.
 {¶ 36} The decision to allow the testimony of a state's witness despite a prosecutor's violation of Crim.R. 16 remains a matter within the trial court's discretion when the record discloses three conditions are met. State v. Scudder, 71 Ohio St.3d 263, 1994-Ohio-298. The record in this case not only establishes the existence of the necessary conditions, it also evinces the trial court's skillful exercise of its discretion.
 {¶ 37} First, the prosecutor protested that during the discovery period he had made both Roddy and Hall available to defense counsel. Therefore, the trial court acted reasonably in accepting the prosecutor's declaration that calling Rasberry, whom the others must have informed counsel had worked with them on the "buy bust" operation, could not have been a complete surprise to the defense.
 {¶ 38} Moreover, the testimony of the two other detectives made it plain that Rasberry was one of the officers in the "take down" unit; his testimony would not have contained anything exculpatory. Consequently, foreknowledge that the prosecutor intended to call Rasberry was not crucial to the defense preparation. State v. Wallace (1997),121 Ohio App.3d 494.
 {¶ 39} Finally, the trial court's resolution of the problem demonstrates Shine suffered no actual prejudice. Defense counsel indicated the recess called by the trial court gave him adequate opportunity to protect his case; counsel declared after the recess that he was "prepared to go forward," thus rendering Shine's argument with respect to this assignment of error unsupportable. Cf., State v. Braxton
(1995), 102 Ohio App.3d 28.
 {¶ 40} Accordingly, Shine's third assignment of error is overruled. Nevertheless, in making this disposition, this court admonishes the state that it does not hereby condone the prosecutor's failure to comply with Crim.R. 16. The defendant is entitled to the tender of timely written discovery. Such dereliction of a prosecutor's duty as took place in this case is closely scrutinized to determine whether the defendant suffered prejudice.
 {¶ 41} Shine's fourth assignment of error states:
 {¶ 42} "IV. The trial court erred in denying the defendant's motion for independent lab testing of evidence in CR 425200."
 {¶ 43} Shine argues the trial court acted improperly in denying his pro se motion for independent laboratory testing of the drugs in this case. A perusal of the record in conjunction with his motion renders Shine's argument unpersuasive.
 {¶ 44} The record reveals on the date of his arraignment, July 16, 2002, Shine received the services of a court-appointed attorney. Defense counsel began filing discovery motions on his client's behalf within ten days of the appointment. Nevertheless, on July 22, 2002, less than a week after his arraignment, Shine, acting pro se, filed a motion for an independent laboratory test pursuant to R.C. 2925.51. Although he listed both numbers of the cases pending against him in the caption of his motion, he filed only a xeroxed copy in this case.
 {¶ 45} Numerous pretrial hearings subsequently were conducted. On August 21, 2002, this case was set for trial on September 5, 2002. The record reveals neither Shine nor his attorney notified the trial court before the date of trial that any request for an independent laboratory test remained outstanding in this case.
 {¶ 46} Instead, the defense raised the issue during jury selection. The trial court considered the motion, noted it had been granted in CR-423921, re-read the memorandum attached to the motion, and finally declared Shine's motion would not be granted in this case. The court reasoned Shine had not meant his motion to pertain to the evidence in this case.
 {¶ 47} Based upon a fair reading of the record, the trial court's conclusion was reasonable. State v. Davidson (1985), 17 Ohio St.3d 132. Shine's failure to file an original document, failure to refer to this case number in the argument attached to his motion, and failure to argue that his statutory right to the test pertained to anything more than mere "residue," all support the trial court's decision.
 {¶ 48} For these reasons, Shine's fourth assignment of error is overruled.
 {¶ 49} Shine's fifth assignment of error states:
 {¶ 50} "V. The trial court erred by instructing the jury as to the law prior to closing arguments contrary to R.C. 2315.01 and to Mr. Shine's prejudice."
 {¶ 51} Shine argues the trial court's deviation from the customary order of proceedings constituted reversible error. In particular, he challenges the trial court's decision to give the jury instructions on the law before permitting the parties to give their closing arguments. This court cannot agree, however, that the trial court's action was improper.
 {¶ 52} The Ohio Supreme Court has left the decision to vary the order of proceedings to the sound discretion of the trial court. Statev. Jenkins (1984), 15 Ohio St.3d 164, paragraph eleven of the syllabus. A defendant who claims the trial court abused its discretion must demonstrate unfairness and prejudice resulted to him.
 {¶ 53} R.C. 2315.01 provides the statutory outline for the order of trial procedure. Subsection (E) states that at the conclusion of the presentation of the evidence, the parties "may present written instructions to the court on matters of law and request them to be given to the jury, which instructions shall be given or refused by the courtbefore the argument to the jury is commenced." Subsection (F) then permits the parties to "argue the case to the jury."
 {¶ 54} Pursuant to the plain terms of the statute, therefore, the trial court in this case actually fully complied with the stated order of procedure. Moreover, Shine has made only an allegation, rather than a demonstration, of prejudice. Under these circumstances, his argument lacks foundation.
 {¶ 55} Accordingly, Shine's fifth assignment of error also is overruled.
 {¶ 56} Shine's sixth assignment of error states:
 {¶ 57} "VI. The verdict was against the manifest weight of the evidence."
 {¶ 58} Shine argues his convictions should be reversed, contending the detectives' testimony lacked credibility.
 {¶ 59} In State v. Thompkins, 78 Ohio St.3d 380 at 387, 1997-Ohio-52, the supreme court approved the test to be applied when reviewing a claim that a conviction is against the manifest weight of the evidence as set forth in State v. Martin (1983), 20 Ohio App.3d 172. This court considers the entire record, weighs the evidence and its reasonable inferences and the credibility of witnesses, and determines whether in resolving any conflicts, the jury clearly lost its way, thus creating amanifest miscarriage of justice.
 {¶ 60} This court remains mindful, however, that the weight of the evidence and the credibility of witnesses are matters primarily for the trier of fact, and a reviewing court must not reverse a verdict where the jury reasonably could conclude from substantial evidence that the state has proven the offense beyond a reasonable doubt. State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one of the syllabus; State v. Eley
(1978), 56 Ohio St.2d 169. Circumstantial evidence of guilt, moreover, is not subject to a standard of proof other than proof beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259; State v. Tinch (1992),84 Ohio App.3d 111 at 122-123.
 {¶ 61} A review of the record demonstrates the detectives' testimony was logical and consistent. According to the evidence they presented, Shine's actions were typical of a drug "runner." Shine attempted to obtain business from passers-by at the intersection, approached the CRI, spoke with the CRI briefly, went to a residence near the intersection where he obtained something from one of the men there, returned to the CRI, and exchanged the item for the CRI's money. Afterward, the CRI had a rock of crack cocaine. During the ensuing arrest, one of the men Shine met with at the residence had the "buy" money in his pocket while the other had thrown away a bag of crack cocaine rocks. Shine also had money in his pocket.
 {¶ 62} From the evidence presented, therefore, the jury was free to infer Shine offered to obtain a rock of crack cocaine for the CRI, possessed the rock of crack cocaine long enough to sell it to the CRI for $20 in marked currency, and then gave the currency to his cohort in the enterprise. Since it cannot be said the jury clearly lost its way in resolving any conflicts in the evidence, Shine's convictions are not against the manifest weight of the evidence. State v. Studgions (May 31, 2001), Cuyahoga App. No. 78307.
 {¶ 63} Accordingly, Shine's sixth assignment of error also is overruled.
 {¶ 64} Shine's seventh assignment of error states:
 {¶ 65} "VII. The sentence imposed by the trial court is not supported by clear and convincing evidence in the record, is not consistent with similar sentences imposed for similar offenders in violation of the overriding principles of Ohio's sentencing plan, and is contrary to law."
 {¶ 66} Shine argues his sentence to a total term of incarceration of eleven months is unduly harsh. He makes this argument despite his convictions of four separate offenses and his previous criminal record. This court disagrees.
 {¶ 67} Prior to the sentencing hearing, Shine had time to prepare a memorandum on the issue of "proportionality" for the trial court's consideration, however, he neglected to take advantage of this opportunity to provide the trial court with information regarding "sentences imposed for similar offenders."
 {¶ 68} The record reflects the trial court considered the applicable statutory factors, made the necessary findings, and indicated its belief the sentence was justified because Shine was experienced in drug-dealing.
 {¶ 69} The trial court's decision, therefore, will not be second-guessed.
 {¶ 70} Accordingly, Shine's seventh assignment of error also is overruled.
 {¶ 71} Shine's convictions and sentences are affirmed.
Judgment affirmed.
Anne L. Kilbane, J., concurs in judgment only.
Diane Karpinski, J., concurs with separate concurring opinion.